WALTER R. CANNON, ESQ.
Nevada Bar No. 001505
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar No. 006270
OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI
9950 W. Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012 - telephone
(702) 383-0701 - facsimile
wcannon@ocgas.com
tdillard@ocgas.com
Attorneys for Defendant
Judge Melanie Andress-Tobiasson

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| VIVIAN WRIGHT-BOLTON, | ) |
| Plaintiff, | ) CASE NO. 2:14-cv-01612-APG-PAL |
| vs. | ) |
| MELANIE ANDRESS-TOBIASSON, individually; THE ESTATE OF JENNIFER BOLTON deceased; KOCKA & BOLTON, LLC, a Nevada Limited Liability Company; | ) |
| Defendants. | ) |

## REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT JUDGE MELANIE ANDRESS-TOBIASSON'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO COUNTER-MOTION PURSUANT TO RULE 56(d)

COMES NOW Defendant JUDGE MELANIE ANDRESS-TOBIASSON, by and through her counsel of record, WALTER R. CANNON, ESQ. and THOMAS D. DILLARD, JR., ESQ., of the law firm of OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI and reply to "Plaintiff's Opposition to Defendant Tobiasson's Motion for Summary Judgment and Counter-Motion Pursuant to 56(d)."

/ / /

/ / /

This Reply and Opposition are made and based upon the papers and pleadings on file herein, the attached Points and Authorities, in conjunction with such evidence and further authorities as this Court may require at the time this matter is considered.

DATED this 20th day of April, 2015.

           OLSON, CANNON, GORMLEY
           ANGULO & STOBERSKI

BY:   /s/ *Thomas D. Dillard*
      WALTER R. CANNON, ESQ.
      Nevada Bar No. 001505
      THOMAS D. DILLARD, JR., ESQ.
      Nevada Bar No. 006270
      9950 W. Cheyenne Avenue
      Las Vegas, Nevada 89129
      Attorneys for Defendant
      Melanie Andress-Tobiasson

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Judge Melanie Andress-Tobiasson ("Judge Andress-Tobiasson") asserted the defense of absolute immunity through a motion for summary judgment promptly after answering the Complaint. [#13]. Judge Andress-Tobiasson asserted her defense essentially on the pleading stage of the litigation because immunity questions are properly addressed as early as possible in the case and there were no material disputations of fact precluding an early legal determination as to the applicability of judicial immunity. Plaintiff has now opposed the motion and also filed a counter-motion pursuant to Federal Rule of Civil Procedure 56(d) to stay the resolution of the motion for summary judgment based on alleged unavailability of affidavits to withstand it. [#19]. Plaintiff however fails to identify a single fact that is necessary to vet in discovery in order to decide whether Judge Andress-Tobiasson is absolutely immune from this suit. The motion for summary judgment included a factual background section to provide the Court a narrative context upon which to decide the issue of law. There is however not a single disputed and material issue of fact that warrants subjecting Judge Andress-Tobiasson to the disruptions and tribulations of discovery before determining whether she is immune from this suit.

With respect to the merits of Plaintiff's opposition, Plaintiff does nothing more than rely upon Judge Andress-Tobiasson's February 12, 2014 rescission in support of her argument that the initial *ex parte* order was entered in the complete absence of jurisdiction (i.e. without any arguable basis to believe there was jurisdiction to make a simple finding of fact). Even if this Court were to accept the legal reasoning of the recision order across the board, it does not pierce Judge Andress-Tobiasson's immunity because it does not indicate that the original order was entered in the utter or complete absence of jurisdiction. In other words, Judge Andress-Tobiasson made at worst a reasonable mistake with respect to a jurisdictional basis to make the requisite finding of fact called for under the Canadian Marriage and Divorce Act. The order was entered upon a colorable jurisdictional basis and therefore immunity attaches to it.

In relying exclusively on the recision order rationale, Plaintiff ignores the principal argument made in the motion for summary judgment; to wit, that the Canadian statute itself

conferred jurisdiction to any or "a court located in the state where one of the spouses reside that declares that the other spouse . . . in unreasonably withholding consent." S.C. 2005 (7)(2)(b). (Civil Marriage Act SC 2005 c 33, attached hereto as Exhibit "A"). Judge Andress-Tobiasson thereby had jurisdiction as "a court" located in the state of Nevada, where both spouses resided, to determine the issue of reasonableness of the non-consenting spouse to the divorce. Plaintiff outright ignores this independent jurisdictional basis (set forth in detail on pages 14-16 of the motion for summary judgment) and relies exclusively on the jurisdictional limits as authorized by the Nevada state legislature under NRS 4.370 for one simple reason – in hopes the Court will do likewise.

In sum, the clear suggestion of the statute is to create a hassle-free remedy for separated spouses living in the states to effectually obtain a dissolution of their Canadian solemnized marriage with the simple assistance of a court in the movant's home state. Judge Andress-Tobiasson thus reasonably relied upon the conferral of jurisdiction by the subject Civil Marriage Act. S.C. 2005, 33 (Assented to 2005-07-20); therefore, she did not act in the complete absence of jurisdiction to forfeit judicial immunity.

Plaintiff lastly and feebly contends that the issuance of the *ex parte* February 12, 2014 order was not a judicial act. The reality is that her entering a signed written order making a judicial determination of a finding of fact is quintessentially a judicial function. This is the type of decision-making role that judicial immunity was specifically designed to insulate a jurist from personal liability in order to preserve independent and impartial adjudication.[1] As made clear in the motion and well established law, Plaintiff's far-flung allegations regarding conspiracy and intent to defraud are immaterial to the issues of law presented in the motion for summary judgment. These contentions are meaningless with respect to whether the issuance of the order was judicial function or whether there was an arguable jurisdictional basis to enter the order. It is

---

[1] "If judges were personally liable for erroneous decisions, the resulting avalanche of suits . . . would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication." Forrester v. White, 484 U.S. 219, 226-27, 108 S.Ct. 538, 544 (1988).

respectfully submitted that both legal questions must be answered in the affirmative based upon the undisputed facts; therefore, there remains no trialworthy issue of fact in the case and judgment is warranted for Judge Andress-Tobiasson as a matter of law.

## II. REPLY TO PLAINTIFF'S OPPOSITION TO JUDGE ANDRESS-TOBIASSON'S MOTION FOR SUMMARY JUDGMENT

### A. The Motion for Summary Judgment is Ripe and Absolutely the Appropriate Tool to Decide Judge Andress-Tobiasson's Judicial Immunity Defense Now.

The best time to decide whether Judge Andress-Tobiasson is immune from suit is the very beginning of the case, or right now; otherwise, her immunity is at least potentially set aside.[2] The motion is predicated upon a ruling on an issue of law. There is no factual underpinnings to the efficacy of absolute immunity that is both disputed and material to the defense.

Immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001). As the Supreme Court has explained, immunity, whether deemed absolute or qualified, creates not only protection from liability, but also the right not to have to answer for one's actions at all. See Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806 (1985) (explaining that "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action"). Put differently, the state actor immunity defense is more than a "mere defense to liability," but is actually a complete immunity from suit, and from all the risks, distractions and "inhibitions of discretionary action, and deterrence of able people from public service," that go along with being a defendant in a civil lawsuit. See id. at 525-30. A litigant is therefore entitled to a ruling on a motion to dismiss on the pleadings or an early motion for summary judgment based on official immunity before the commencement of discovery. Id. at 526, 105 S.Ct. 2806 (recognizing that "[u]nless the plaintiff's

---

[2] The Supreme Court has in fact recognized an exception for immunity defenses to the general rule of appellate procedure that summary judgment denials are not ordinarily immediately appealable. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806 (1985). This exception has been repeatedly and expressly recognized because it is "an immunity from suit rather than a mere defense to liability; . . . [which] is effectively lost if a case is erroneously permitted to go to a trial." Id. at 526. Hence, a denial of a summary judgment motion seeking absolute immunity is reviewable by interlocutory appeal.

allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery"); see also Crawford-El v. Britton, 523 U.S. 574, 598, 118 S.Ct. 1584 (1998)(holding "[i]f the defendant does plead qualified immunity, the court should resolve that threshold question before permitting discovery").

Plaintiff also contends that because her claims are predicated upon 42 U.S.C. § 1983 that summary judgment is inappropriate because these cases turn on factual disputations. Not true at all. For this overstated generalization, Plaintiff cites a Ninth Circuit case that does caution lower courts to take care in deciding some §1983 cases (not remotely comparable to this suit) at the summary judgment phase of the litigation. See Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003). This caution regarding summary judgment being appropriate in the rare case most is made in this case and others involving police encounters with persons where the officers are using traditional forms of force such as striking and compliance techniques to overcome alleged resistance or fighting.[3] These so-called fights ordinarily are replete with multiple factual issues because each and every move made by each of the participants in a physical struggle potentially raise factual disputations from start of the encounter to finish.

The instant case, on the contrary involves, a question of law pertaining to the application of absolute judicial immunity. The caution to tread lightly with Rule 56 in cases involving fights with police officers clearly has no bearing whatsoever to Judge Andress-Tobiasson's motion. Plaintiff identifies no facts that must be decided in order to determine whether the issuance of the order was a judicial act or whether there was a colorable jurisdictional basis for the order. That is because there are none. There are no hurdles that must be cleared in order to decide these issues of law. The motion for summary judgment is ripe and insulated from any potential factual disputes between the parties.

///

///

---

[3] See also Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); Liston v. County of Riverside, 120 F.3d 965, 977 (9th Cir. 1997).

### B. Judge Andress-Tobiasson's Issuance of an *Ex Parte* Order on February 12, 2014 was a Judicial Act.

The fact that Judge Andress-Tobiasson issued the order *ex parte*, without notice to Plaintiff or an opportunity for her to be heard, does not mean that her act was not judicial. Plaintiff's naked allegations made in an attempt to ascribe some conspiratorial objective or malicious motive held by Judge Andress-Tobiasson as the underlying motivation for the order is impertinent as a matter of law. See Forrester, 484 U.S. at 227, 108 S.Ct. at 544 (an act "does not become less judicial by virtue of an allegation of malice or corruption of motive"); Clavinger v. Saxner, 474 U.S. 193, 200, 106 S.Ct. 496, 500 (1985)("Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed."). There is simply no debate that the alleged actions taken were in the Judge's judicial capacity.

In Stump v. Sparkman, the Supreme Court held that a judge was absolutely immune with respect to his approval of a mother's *ex parte* petition for an order permitting the sterilization of her mentally challenged daughter. 435 U.S. 349, 355-64, 98 S.Ct. 1099, 1104-09 (1978). The Court squarely rejected the plaintiffs' argument that the approval of the petition was not a judicial act because it was "not given a docket number, was not placed on file with the clerk's office, and was approved in an *ex parte* proceeding without notice to the minor, without a hearing, and without the appointment of a guardian ad litem." Id. at 360-63, 98 S.Ct. at 1106-08. In the Court's view, "[b]ecause Judge Stump performed the type of act normally performed only by judges and because he did so in his capacity as a Circuit Court Judge, we find no merit to [plaintiffs'] argument that the informality with which he proceeded rendered his action nonjudicial and deprived him of his absolute immunity." Id. at 362-63, 98 S.Ct. at 1108. Justice Stump's *ex parte* approval of a sterilization order is a far more egregious act than alleged in this case, yet he was immune from liability because it was a judicial act.

Judge Andress-Tobiasson cannot be held personally liable for the alleged judicial mistakes. The allegations do not involve any administrative role or personal endeavor. Plaintiff's allegations make clear that Jennifer Bolton dealt with Judge Andress-Tobiasson in her judicial capacity. She came to her because she needed "a court" to make the requisite finding and enter a

signed order to that effect. Plaintiff in fact brings suit against her pursuant to §1983 because she acted under color of state law. These allegations recognize Judge Andress-Tobiasson was acting in her judicial capacity. See Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 770 (3d Cir. 2000)(holding a circuit court judge absolutely immune from claim filed by his former executive administrator alleging the judge invaded his privacy by issuing an *ex parte* and oral order releasing to the newspaper a petition for protection from abuse filed by the administrator's wife).

The fact that Judge Andress-Tobiasson issued the order ex parte, without notice to Plaintiff or an opportunity for her to be heard, does not mean that her act was not judicial either. The Supreme Court's decision in Stump v. Sparkman, supra makes this all too clear. See Gallas, 211 F.3d at 770. Because Judge Andress-Tobiasson performed the type of act normally performed only by judges and because she did so in her capacity as a Justice Court Judge, there can be "no merit to Plaintiff's argument that the informality with [s]he proceeded rendered [her] action nonjudicial and deprived [her] of [her] absolute immunity." Id. (*quoting* Stump, 435 U.S. 362-63, 98 S.Ct. at 1108).

Plaintiff has not averted the judicial immunity defense based on her allegations that "issuing a fraudulent order is not a judicial act." The case law set forth in the motion and in this instant reply refute this legal assertion utterly and completely. Plaintiff to be sure has brought suit against Judge Andress-Tobiasson for acting in her judicial capacity and the first element of the absolute immunity test is met.

C. **Judge Andress-Tobiasson Did Not Enter the Order in the Clear Absence of All Jurisdiction.**

Judge Andress-Tobiasson, based upon the plain language of the subject statute, had a reasonable basis to conclude that she was within her jurisdiction to enter the order even if her conclusion was mistaken. A judge does not act in the clear absence of jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court even though a court rule or other procedural constraint required another judge to act in the matter. See Gallis, 211 F.2d at 771; Stump, 435 U.S. at 356-57, 98 S.Ct. at 1104-05 (holding a judge does not lose immunity merely because it is later determined that in fact he or she did not have jurisdiction).

Also, an allegation that the judge was motivated by a non-judicial intent are irrelevant. Forrester, 484 U.S. at 227, 108 S.Ct. at 544; see also Stump, 435 U.S. at 363-64, 98 S.Ct. at 1108 (allegations that judge's actions were "unfair" and "totally devoid of judicial concern for the interests and well-being of the young girl involved" could not overcome judicial immunity). A straightforward reading of the pertinent language from the Canadian Civil Marriage Act confers jurisdiction on "a court" such as the Las Vegas Justice Court to do nothing more than simply declaring whether or not a spouse is unreasonably withholding consent to a divorce of a marriage, involving two resident Nevadans and entered into in Canada, that is functionally already ended. See Ex. "A" pp. 3-4 (S.C. 2005 (7)(2)-(b)).

Plaintiff relied upon the rescission order indicating that the justice courts have only the authority granted to it by statute and then disregards the subject statute altogether. [19-2 pg. 3 lines 10-11]. The conferral of jurisdiction upon a court of a particular claim or type of a case through operation of a statute (beyond the statutes creating the court) is not novel. Title 28 has forty (40) examples of Congress granting original jurisdiction on Article III federal courts.[4] Indeed, the latest Congressional expansion of Article III court original jurisdiction came with the Multiparty, Multiforum Trial Litigation Act of 2002 ("MMTLA"). 28 U.S.C. § 1369. It afforded federal courts jurisdiction over mass tort claims involving deaths of 75 persons or more involving parties with minimum diversity or involving more than one state with respect to defendant residency or the location of the subject accident. One of the principal purposes of this extension of original jurisdiction is comparable to the wide-sale conferral of jurisdiction by the subject Canadian legislation to provide a convenient and less expensive forum to the litigants.[5]

The Justice Court of Las Vegas has the implied power to find and determine facts of cases brought before it. Judge Andress-Tobiasson upon first impression reasonably believed the

---

[4] See 28 U.S.C. § 1330 *et. seq.*

[5] In Thompson v. Mixon, 2007 WL 1550948 (E.D. La. 2007), the court reiterated that the MMTJA was designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora and that the ultimate goal of the MMTJA is consolidation. (citing Wallace v. Louisiana Citizens Property Ins. Corp., 444 F.3d 697, 32 A.L.R. Fed. 2d 707 (5th Cir. 2006)); see also Passa v. Derderian, 308 F. Supp. 2d 43 (D.R.I. 2004).

Canadian Civil Marriage Act afforded her very limited jurisdiction to make the seemingly simple and conventional issue of the reasonableness of just one spouse withholding consent to the divorce of a long dysfunctional marriage entered into in Canada. There was at least an arguable basis to believe the statute, created to avoid litigating a singular and simple fact between United States citizens in Canada, properly vested jurisdiction with the Las Vegas Justice Court. Plaintiff thus cannot demonstrate the clear absence of all jurisdiction to skirt Judge Andress-Tobiasson's absolute immunity from suit. Summary judgment in favor of Defendant is therefore warranted.

### III.  OPPOSITION TO COUNTER-MOTION TO STAY MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d)

#### Not One of the Mandatory Requirements for Rule 56(d) Relief Have Been Satisfied by Plaintiff in Her Counter-Motion

Since Plaintiff has not complied with the strictures of Federal Rule of Civil Procedure 56(d), the Court should grant the motion for summary judgment in its entirety and deny Plaintiff's motion for leave to defer consideration on the motion and putting off Judge Tobiasson's absolute immunity. A party requesting a continuance pursuant to Rule 56(d), formerly designated as Rule 56(f), must identify by affidavit or declaration, the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment. See Fed.R.Civ.P. 56(d)[6]; Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006). In the instant case, Plaintiff has failed to present a timely application which specifically identifies relevant information that will resist summary judgment and that there is some basis for believing that the information sought actually will be uncovered through specific discovery. As a consequence, Plaintiff's Rule 56(d) request is deficient under the law and should be denied.

---

[6] Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

The Ninth Circuit Court of Appeals has held that for the district court to continue a summary judgment motion in order to permit further discovery there must be the submission of a properly crafted affidavit by the non-movant. See California v. Campbell, 138 F.3d 772 (9th Cir. 1997). The Court concluded that the non-movant party must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." Id. at 779; see also Public Service Co. of Colorado v. Continental Cas. Co., 26 F.3d 1508 1518-19 (10th Cir. 1994); Medina v. Custodio, 964 F.2d 32, 38 (1st Cir. 1992); Emmons v. McLaughlin, 874 F.2d 351, 356-57 (6th Cir. 1989).

"The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Company, 353 F.3d 1125, 1129-30 (9th Cir. 2004)(*quoting* Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)). In addition, "[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment." Teamsters Local Nos 175 and 505, 353 F.3d at 1130 (*quoting* Cal. Union Ins. Co. v. Am. Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990)). "The mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under rule 56(f). "Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades District Council, 817 F.2d 1391, 1395 (9th Cir. 1987).

Plaintiff's opposition to the motion for summary judgment does contain a declaration, however, it fails to sufficiently address the facts that can be discovered, a basis to infer that those facts can be discovered through specific discovery and a legal basis, after becoming armed with those facts, to withstand summary judgment. Plaintiff fails to make any argument how any amount of discovery will reveal facts upon which Plaintiff can present an actionable federal or state law theory against Judge Andress-Tobiasson by piercing her absolute immunity from suit.

The Court should thus scrutinize the Rule 56(f) request with particularity in light of Judge

Tobiasson's immunity from this suit. The Tenth Circuit in <u>Lewis v. City of Ft. Collins</u>, 903 F.2d 752 (10th Cir. 1990) has addressed the issue of Rule 56(d), formerly Rule 56(f), to a motion based on qualified immunity:

> 56(f) discretion must be limited when a summary judgment motion is based on qualified [or absolute] immunity because insubstantial lawsuits 'against government officials [should] be resolved prior to discovery and on summary judgment if possible. . . . Liberal application of rule 56(f) should not be allowed to subvert the goals of <u>Harlow</u> and its progeny. . . .
>
> Accordingly, in response to a summary judgment motion based on qualified immunity, a plaintiff's 56(f) affidavit must demonstrate "how discovery will enable them to rebut a defendant's showing of objective reasonableness" or, stated alternatively, demonstrate a "connection between information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion." . . . To that end, it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or "that evidence supporting a party's allegation is in opposing party's hands."

<u>Lewis</u>, 903 F.2d at 758-59 (internal citations omitted). Even the temporary setting aside of immunity from suit by allowing discovery to proceed inflicts manifest harm and therefore the legal basis for any such order is automatically appealable.[7] Plaintiff's opposition wholly fails to address any theories of objective unreasonableness or "how discovery will enable [her] to rebut" the validity of the absolute immunity defense.

Since the affidavit fails to comport with the requirements of Rule 56(d), the Court should not stay summary judgment just based on Plaintiff's rank speculation that she can develop facts in support of her argument. The determination of whether the issuance of the February 12, 2014 order was a judicial act and undertaken with a reasonable basis to assert subject matter jurisdiction are legal issues. Plaintiff does not identify specific discovery that must be obtained because there are no disputed facts material to the determination of these issues. The counter-motion is unsound and therefore must be denied.

/ / /

/ / /

/ / /

/ / /

---

[7] <u>See</u> Section II(A) <u>supra</u>.

## IV. CONCLUSION

IN ACCORDANCE WITH THE FOREGOING, Defendant Judge Andress-Tobiasson submits that the motion for summary judgment is ripe to be decided now and should be granted because the allegations in the Complaint succumb to absolute immunity. All of the claims are based upon a judicial act that was not taken in the total and complete absence of jurisdiction.

RESPECTFULLY SUBMITTED this 20th day of April, 2015.

          OLSON, CANNON, GORMLEY
          ANGULO & STOBERSKI

BY: /s/ *Thomas D. Dillard*
     WALTER R. CANNON, ESQ.
     Nevada Bar No. 001505
     THOMAS D. DILLARD, JR., ESQ.
     Nevada Bar No. 006270
     9950 W. Cheyenne Avenue
     Las Vegas, Nevada 89129
     Attorneys for Defendant
     Melanie Andress-Tobiasson

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of April, 2015, I served the above **REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT JUDGE MELANIE ANDRESS-TOBIASSON'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO COUNTER-MOTION PURSUANT TO RULE 56(d)** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

Cal J. Potter, III Esq.
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
Phone: 385-1954
Fax: 385-9081
Attorney for Plaintiff

/s/ Melissa Burgener
AN EMPLOYEE OF OLSON, CANNON,
GORMLEY, ANGULO & STOBERSKI

# EXHIBIT A



```
         1 of 101      ←  →      ✕
    ☑ Canadian   ☑ Civil
    ☑ Marriage   ☑ Act   ☑ court
    ☑ unreasonable   ☑ consent
```

# Civil Marriage Act, SC 2005, c 33

Jun 26, 2013

Link to the latest version: http://canlii.ca/t/7w02

Stable link to this version: http://canlii.ca/t/523mq

Citation to this version: Civil Marriage Act, SC 2005, c 33, <http://canlii.ca/t/523mq> retrieved on 2015-04-17

Currency: Last updated from the Justice Laws Web Site on 2015-04-15

## Civil Marriage Act

**S.C. 2005, c. 33**

Assented to 2005-07-20

An Act respecting certain aspects of legal capacity for marriage for civil purposes

Preamble

   WHEREAS the Parliament of Canada is committed to upholding the Constitution of Canada, and section 15 of the *Canadian Charter of Rights and Freedoms* guarantees that every individual is equal before and under the law and has the right to equal protection and equal benefit of the law without discrimination;

   WHEREAS the courts in a majority of the provinces and in one territory have recognized that the right to equality without discrimination requires that couples of the same sex and couples of the opposite sex have equal access to marriage for civil purposes;

   WHEREAS the Supreme Court of Canada has recognized that many Canadian couples of the same sex have married in reliance on those court decisions;

   WHEREAS only equal access to marriage for civil purposes would respect the right of couples of the same sex to equality without discrimination, and civil union, as an institution other than marriage, would not offer them that equal access and would violate their human dignity, in breach of the *Canadian Charter of Rights and Freedoms*;

   WHEREAS the Supreme Court of Canada has determined that the Parliament of Canada has legislative jurisdiction over marriage but does not have the jurisdiction to establish an institution other than marriage for couples of the same sex;

   WHEREAS everyone has the freedom of conscience and religion under section 2 of the *Canadian Charter of Rights and Freedoms*;

WHEREAS nothing in this Act affects the guarantee of freedom of conscience and religion and, in particular, the freedom of members of religious groups to hold and declare their religious beliefs and the freedom of officials of religious groups to refuse to perform marriages that are not in accordance with their religious beliefs;

WHEREAS it is not against the public interest to hold and publicly express diverse views on marriage;

WHEREAS, in light of those considerations, the Parliament of Canada's commitment to uphold the right to equality without discrimination precludes the use of section 33 of the *Canadian Charter of Rights and Freedoms* to deny the right of couples of the same sex to equal access to marriage for civil purposes;

WHEREAS marriage is a fundamental institution in Canadian society and the Parliament of Canada has a responsibility to support that institution because it strengthens commitment in relationships and represents the foundation of family life for many Canadians;

AND WHEREAS, in order to reflect values of tolerance, respect and equality consistent with the *Canadian Charter of Rights and Freedoms*, access to marriage for civil purposes should be extended by legislation to couples of the same sex;

NOW, THEREFORE, Her Majesty, by and with the advice and consent of the Senate and House of Commons of Canada, enacts as follows:

Short title

1. This Act may be cited as the *Civil Marriage Act*.

## PART 1
## MARRIAGE

Marriage — certain aspects of capacity

2. Marriage, for civil purposes, is the lawful union of two persons to the exclusion of all others.

Religious officials

3. It is recognized that officials of religious groups are free to refuse to perform marriages that are not in accordance with their religious beliefs.

Freedom of conscience and religion and expression of beliefs

3.1 For greater certainty, no person or organization shall be deprived of any benefit, or be subject to any obligation or sanction, under any law of the Parliament of Canada solely by reason of their exercise, in respect of marriage between persons of the same sex, of the freedom of conscience and religion guaranteed under the *Canadian Charter of Rights and Freedoms* or the expression of their beliefs in respect of marriage as the union of a man and woman to the exclusion of all others based on that guaranteed freedom.

Marriage not void or voidable

4. For greater certainty, a marriage is not void or voidable by reason only that the spouses are of the same sex.

Marriage of non-resident persons

5. (1) A marriage that is performed in Canada and that would be valid in Canada if the spouses were domiciled in Canada is valid for the purposes of Canadian law even though either or both of the spouses do not, at the time of the marriage, have the capacity to enter into it under the law of their respective state of domicile.

Retroactivity

(2) Subsection (1) applies retroactively to a marriage that would have been valid

under the law that was applicable in the province where the marriage was performed but for the lack of capacity of either or both of the spouses to enter into it under the law of their respective state of domicile.

Order dissolving marriage

(3) Any court order, made in Canada or elsewhere before the coming into force of this subsection, that declares the marriage to be null and void or that grants a divorce to the spouses dissolves the marriage, for the purposes of Canadian law, as of the day on which the order takes effect.

2005, c. 33, s. 5; 2013, c. 30, s. 3.

PART 2
DISSOLUTION OF MARRIAGE FOR NON-RESIDENT SPOUSES

Definition of "court"

6. In this Part, "court", in respect of a province, means

(a) for Ontario, the Superior Court of Justice;

(b) for Quebec, the Superior Court;

(c) for Nova Scotia and British Columbia, the Supreme Court of the province;

(d) for New Brunswick, Manitoba, Saskatchewan and Alberta, the Court of Queen's Bench for the province;

(e) for Prince Edward Island and Newfoundland and Labrador, the trial division of the Supreme Court of the province; and

(f) for Yukon and the Northwest Territories, the Supreme Court, and in Nunavut, the Nunavut Court of Justice.

It also means any other court in the province whose judges are appointed by the Governor General and that is designated by the Lieutenant Governor in Council of the province as a court for the purposes of this Part.

2005, c. 33, s. 6; 2013, c. 30, s. 4.

Divorce — non-resident spouses

7. (1) The court of the province where the marriage was performed may, on application, grant the spouses a divorce if

(a) there has been a breakdown of the marriage as established by the spouses having lived separate and apart for at least one year before the making of the application;

(b) neither spouse resides in Canada at the time the application is made; and

(c) each of the spouses is residing — and for at least one year immediately before the application is made, has resided — in a state where a divorce cannot be granted because that state does not recognize the validity of the marriage.

Application

(2) The application may be made by both spouses jointly or by one of the spouses with the other spouse's consent or, in the absence of that consent, on presentation of an order from the court or a court located in the state where one of the spouses resides that declares that the other spouse

(a) is incapable of making decisions about his or her civil status because of a mental disability;

(b) is unreasonably withholding consent; or

(*c*) cannot be found.

**Exception if spouse is found**

(3) Despite paragraph (2)(*c*), the other spouse's consent is required if that spouse is found in connection with the service of the application.

2005, c. 33, s. 7; 2013, c. 30, s. 4.

**No corollary relief**

**8.** For greater certainty, the *Divorce Act* does not apply to a divorce granted under this Act.

2005, c. 33, s. 8; 2013, c. 30, s. 4.

**Effective date generally**

**9.** (1) A divorce takes effect on the day on which the judgment granting the divorce is rendered.

**Certificate of divorce**

(2) After a divorce takes effect, the court must, on request, issue to any person a certificate that a divorce granted under this Act dissolved the marriage of the specified persons effective as of a specified date.

**Conclusive proof**

(3) The certificate, or a certified copy of it, is conclusive proof of the facts so certified without proof of the signature or authority of the person appearing to have signed the certificate.

2005, c. 33, s. 9; 2013, c. 30, s. 4.

**Legal effect throughout Canada**

**10.** On taking effect, a divorce granted under this Act has legal effect throughout Canada.

2005, c. 33, s. 10; 2013, c. 30, s. 4.

**Marriage dissolved**

**11.** On taking effect, a divorce granted under this Act dissolves the marriage of the spouses.

2005, c. 33, s. 11; 2013, c. 30, s. 4.

**11.1** [Repealed, 2013, c. 30, s. 4]

**Definition of "competent authority"**

**12.** (1) In this section, "competent authority", in respect of a court in a province, means the body, person or group of persons ordinarily competent under the laws of that province to make rules regulating the practice and procedure in that court.

**Rules**

(2) Subject to subsection (3), the competent authority may make rules applicable to any applications made under this Part in a court in a province, including rules

(*a*) regulating the practice and procedure in the court;

(*b*) respecting the conduct and disposition of any applications that are made under this Part without an oral hearing;

(*c*) prescribing and regulating the duties of the officers of the court; and

(*d*) prescribing and regulating any other matter considered expedient to attain the ends of justice and carry into effect the purposes and provisions of this Part.

**Exercise of power**

(3) The power of a competent authority to make rules for a court must be exercised

n the like manner and subject to the like terms and conditions, if any, as the power to make rules for that court that are conferred on that authority by the laws of the province.

Not statutory instruments

(4) Rules that are made under this section by a competent authority that is not a judicial or quasi-judicial body are deemed not to be statutory instruments within the meaning and for the purposes of the *Statutory Instruments Act*.

2005, c. 33, s. 12; 2013, c. 30, s. 4.

Regulations

**13.** (1) The Governor in Council may make regulations for carrying out the purposes and provisions of this Part, including regulations providing for uniformity in the rules made under section 12.

Regulations prevail

(2) Any regulations that are made to provide for uniformity in the rules prevail over those rules.

2005, c. 33, s. 13; 2013, c. 30, s. 4.

**14.** [Repealed, 2013, c. 30, s. 4]

**15.** [Repealed, 2013, c. 30, s. 4]

---

Scope of Databases

Tools

Terms of Use

Privacy

Help

Contact Us

About

by LEXUM  for the Federation of Law Societies of Canada